# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Philadelphia Gas Works, : 
                Petitioner : 
                  : 
     v. : No. 1291 C.D. 2018
                  : ARGUED:  November 12, 2019
Pennsylvania Public Utility : 
Commission, : 
             Respondent : 


BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE ANNE E. COVEY, Judge
                HONORABLE ELLEN CEISLER, Judge


OPINION BY JUDGE CEISLER           FILED:  December 9, 2019

Philadelphia Gas Works (PGW) petitions for review from three orders of the Pennsylvania Public Utility Commission (Commission):  a December 8, 2016 final order; a May 18, 2018 order denying reconsideration of the December 8, 2016 order; and an August 23, 2018 order granting in part and denying in part reconsideration of the May 18, 2018 order.  The Commission concluded that once liens securing payment of delinquent gas bills are docketed against real property in the Philadelphia County Court of Common Pleas (County Court), the Commission no longer has jurisdiction over rate issues related to those bills.  Based on that conclusion, the Commission reasoned that the late fees of 1.5% per month charged by PGW, although authorized as rates under its Commission tariff, are no longer applicable to unpaid gas bills once liens are docketed relating to those bills.  As a result, the Commission ordered refunds of years of late fees on charges that were subject to

docketed liens, imposed financial penalties on PGW for charging those late fees, and ordered PGW to reorganize its billing system.[1]  After thorough review, we reverse.

## I. Background

PGW is owned by the City of Philadelphia (City).  PGW functions as a public utility providing natural gas to customers in the City.  Pursuant to the Commission's applicable regulations and PGW's tariff approved by the Commission, PGW charges a late fee of 1.5% per month on all overdue gas bills.  PGW charges this late fee regardless of whether the City has docketed a lien in the County Court in relation to an unpaid balance.  Only if a lien balance is reduced to a *judgment* do late fees stop accruing on that balance.[2]

Colonial Garden Realty Co., L.P. (Colonial) and Simon Garden Realty Co., L.P. (Simon), along with their mutual property management company, SBG Management Services, Inc. (collectively, Owners) have intervened in this appeal.[3]

---

[1] The legal issues raised and briefed in this appeal are identical to those in *Philadelphia Gas Works v. Pennsylvania Public Utility Commission* (Pa. Cmwlth., No. 1404 C.D. 2018, filed December 9, 2019) (*PGW II*) and *Philadelphia Gas Works v. Pennsylvania Public Utility Commission* (Pa. Cmwlth., No. 1405 C.D. 2018, filed December 9, 2019) (*PGW III*).  All three cases were argued on the same date.

[2] In order to compel satisfaction of the lien, the City may reduce it to a judgment *in rem* in order to force a sale of the property.  *See* Section 31.2 of what is commonly known as the Municipal Claims and Tax Liens Act, Act of May 16, 1923, P.L. 207, *as amended*, added by the Act of March 15, 1956, P.L. (1955) 1274, 53 P.S. § 7283(a).  Alternatively, the City may sue the property owner *in personam*, obtain a money judgment, and execute against the property.  *See* 53 P.S. § 7185.  In either instance, the final judgment must include an adjudication of the actual amount owed.

[3] The notice of intervention filed by SBG Management Services, Inc. (SBG) states that SBG is also the agent for Fairmount Manor Realty Co., L.P., Elrea Garden Realty Co., L.P., Marshall Square Realty Co., L.P., Marchwood Realty Co., L.P., Oak Lane Court Realty Co., L.P., and Fern Rock Realty Co., L.P.  However, those entities did not participate in this appeal.

Colonial and Simon are owners of real properties in the City improved with apartment complexes. Their properties receive gas service from PGW.

Owners raised several billing disputes with PGW in complaints before the Commission. Relevant here, Owners disputed PGW's continued accrual of late fees on docketed liens. Viewing a docketed lien as the equivalent of a final judgment, the Commission concluded it no longer had jurisdiction to determine the amount of the debt once a lien was filed. The Commission further reasoned that once it no longer had jurisdiction, its approved tariff no longer applied, and PGW could not continue charging the monthly late fees authorized by the tariff. Instead, the Commission determined only statutory interest could be added to the docketed lien amount going forward.[4] Based on these conclusions, the Commission ordered PGW to refund several years of late fees charged on docketed lien amounts. Although it acknowledged the issue of adding late fees to docketed lien amounts was one of first impression, the Commission also imposed a financial penalty on PGW for having charged those fees. Further, the Commission ordered PGW to undertake what would amount to a complete reorganization of its billing operations. The Commission directed PGW to stop adding late fees to arrearages subject to docketed liens and to stop reflecting those arrearages on subsequent gas bills. The Commission ordered PGW to complete its billing reorganization within 90 days of the date of the Commission's May 18, 2018 order.

This petition for review by PGW followed.

---

[4] However, statutory judgment interest was not applicable because, as discussed further below, the liens were not judgments.

3

## II. Issues

On appeal,[5] PGW presents five arguments, which we paraphrase as follows:

1.     The Commission misinterpreted applicable statutory directives and case law in holding that once a customer's debt becomes subject to a docketed municipal lien, the Commission loses jurisdiction over the debt and PGW may not assess further late payment charges on the past due amounts consistent with its Commission-approved tariff.

2.     The Commission violated PGW's constitutional due process rights by announcing, applying, and enforcing a new legal interpretation against PGW without prior notice.

3.     The Commission's monetary civil penalty imposed against PGW was not supported by substantial evidence, and its imposition constituted arbitrary and capricious action and/or an abuse of discretion.

4.     The system-wide modifications of PGW's billing as directed by the Commission constituted arbitrary and capricious action and/or an abuse of discretion.

5.     The timeframe established by the Commission for PGW's compliance with the system-wide modifications of PGW's billing system constituted arbitrary and capricious action and/or an abuse of discretion.

---

[5] Our review of a decision of the Commission is limited to determining whether substantial evidence supports the necessary findings of fact, whether the Commission committed an error of law, and whether constitutional rights were violated. *Retail Energy Supply Ass'n v. Pa. Pub. Util. Comm'n*, 185 A.3d 1206 (Pa. Cmwlth. 2018) (*en banc*). On issues of law, our standard of review is *de novo* and our scope of review is plenary. *Id.*

4

### III. Discussion

PGW charges a late fee of 1.5% per month, or 18% per year, on each unpaid gas bill. 52 Pa. Code § 56.22(a); PHILA. GAS WORKS GAS SERV. TARIFF (2014)[6] at 26. Under the Public Utility Code (Utility Code),[7] the late fee is a "rate."[8] *See Kornafel v. Pa. Pub. Util. Comm'n*, 538 A.2d 146, 147 (Pa. Cmwlth. 1988) (assessment of late payments is a rate structure question). Late fees are designed to compensate for the derivative costs incurred by a utility because of late payments. *Id.* Until the Commission's decision in this matter, PGW's standard practice was to continue adding late fees until a delinquent bill was paid, as authorized in its tariff, regardless of whether the City had docketed the related municipal lien.

However, the Commission concluded that once a lien is docketed, PGW may not charge further late fees on the unpaid bill at issue. In its first and primary argument, PGW contends the Commission erred in this determination. We agree.

The Commission has jurisdiction over PGW as a public utility under the Utility Code. *See* 66 Pa. C.S. § 2212. Accordingly, PGW has all the legal rights provided under the Utility Code in billing and collecting payment for gas deliveries. Those rights include adding late fees to overdue balances. *See* 52 Pa. Code § 56.22.

---

[6] *See* https://www.pgworks.com/uploads/media/PGWGasServiceTariff.pdf (last visited November 26, 2019). (The tariff was dated December 18, 2014, but was not effective until January 1, 2015.)

[7] 66 Pa. C.S. §§ 101 – 3316.

[8] A "rate" includes "[e]very individual, or joint fare, toll, charge, rental, or other compensation whatsoever of any public utility . . . and any rules, regulations, practices, classifications or contracts affecting any such compensation, charge, fare, toll, or rental." 66 Pa. C.S. § 102.

They also include establishing Commission-approved payment arrangements for delinquent accounts. *See* 66 Pa. C.S. §§ 1405(a), 1414(c).

Municipal utility bills are the personal debts of the customers receiving service. *See* 53 P.S. § 7251;[9] *Skupien v. Borough of Gallitzin*, 578 A.2d 577 (Pa. Cmwlth. 1990) (citing *McArther v. City of Phila. Tax Review Bd.*, 541 A.2d 415 (Pa. Cmwlth. 1988)) (property owner is personally responsible for utility charges, independent of and in addition to a lien against the property, and regardless of whether owner or tenant receives the utility service). However, the City, as PGW's owner, also has statutory rights under the statute known as the Pennsylvania Municipal Claims and Tax Liens Act (Lien Act) to apply municipal liens as further security for the collection of overdue gas bill payments. Of critical importance here, under the Lien Act, a municipal lien arises automatically, by operation of law, as soon as a charge for a municipal service is assessed. *See* Section 3 of the Lien Act, 53 P.S. § 7106(a)(1); *Borough of Ambler v. Regenbogen*, 713 A.2d 145 (Pa. Cmwlth. 1998). Although the underlying debt is personal to the customer, the lien is *in rem* against the real property at which service was provided. Section 4 of the Lien Act, 53 P.S. § 7107; Pa. R.C.P. No. 3190; *City of Philadelphia v. Perfetti*, 119 A.3d 396 (Pa. Cmwlth. 2015). Just as, for example, a mortgage secures payment of an underlying personal loan, a municipal lien secures payment of the property owner's personal debt for unpaid gas bills.[10] *Accord Perfetti* (property benefitted by municipal service can be held responsible for satisfaction of related charges).

---

[9] Section 1 of the Act of April 17, 1929, P.L. 527, *as amended.*

[10] We do not intend to imply that mortgage liens and municipal liens are otherwise analogous than as discussed here.

When the City dockets a lien in the County Court, that filing merely perfects the preexisting lien. *See* 53 P.S. § 7106(b); *Vurimindi v. LandAmerica Fin. Grp., Inc.* (Pa. Cmwlth., No. 2082 C.D. 2011, filed Nov. 29, 2012), 2012 Pa. Commw. Unpub. LEXIS 903 (unreported). It provides notice to third parties, such as banks, other creditors, and potential real estate purchasers, that there is an unsatisfied lien against the real property where the utility service was provided. *See Graffen v. City of Philadelphia*, 984 F.2d 91 (3d Cir. 1992). However, recording of a lien, like recording of a mortgage, is not entry of a judgment. *See Regenbogen* (execution on municipal lien requires obtaining a judgment). It does not even amount to commencement of a civil action, which the Commission has acknowledged does not divest it of jurisdiction. *See*, *e.g.*, *Ford v. Duquesne Light Co.* (Pa.P.U.C., Docket No. Z-00245911, filed May 9, 1995) (Initial Decision), 1995 Pa. PUC LEXIS 49, and additional Commission decisions cited therein.

The legislature added Chapter 14[11] to the Utility Code to protect lien rights from interference by the Commission, specifically intending to provide the collection aids of *both* the Utility Code *and* the Lien Act as *cumulative* remedies, *not* as alternative or preclusive choices. *See* 66 Pa. C.S. §§ 1402(4), 1414(a); *see also* 66 Pa. C.S. § 2212(n). The Legislature expressly declared its intent "to provide *additional* collection tools to city natural gas distribution operations to recognize the financial circumstances of the operations and protect their ability to provide natural gas for the benefit of the residents of the city." 66 Pa. C.S. § 1402(4) (emphasis added). Notably, a major motivation for supporting enhanced collection remedies was the Legislature's recognition that unpaid gas bills can result in higher rates to PGW's paying customers. 66 Pa. C.S. § 1402(1).

---

[11] 66 Pa. C.S. §§ 1401 – 1419.

PGW correctly asserts that the Commission's decisions improperly force PGW to choose between forgoing late charges on unpaid balances once a lien is perfected and taking the chance of not perfecting the lien. Such a choice is utterly untenable. Late charges are authorized by PGW's tariff. They are essential as leverage to encourage payment, as well as to cover administrative costs of late payments. Thus, PGW cannot afford to forgo them in exchange for perfecting a lien. However, if PGW does not perfect its lien and thereby give notice of the lien to third parties, PGW's security arising from the lien could be at risk if there is a later transfer or encumbrance of the property and the third party involved in that transaction has no notice of the lien.

The Commission relies largely on two decisions, *Gasparro v. Pennsylvania Public Utility Commission*, 814 A.2d 1282 (Pa. Cmwlth. 2003), and *Equitable Gas Co. v. Wade*, 812 A.2d 715 (Pa. Super. 2002), for its conclusion that a docketed municipal lien constitutes a judgment that forecloses the Commission's jurisdiction. Contrary to the Commission's reasoning, neither *Gasparro* nor *Equitable Gas* supports the Commission's conclusion here. Indeed, both decisions support PGW's authority to continue imposing late fees on delinquencies that are subject to docketed liens.

In *Gasparro*, this Court found the Commission no longer had jurisdiction after entry of a final money judgment on a delinquent billing claim. However, no final money judgment is at issue here. Notably, this Court specifically observed in *Gasparro* that the Commission retained jurisdiction to review the underlying facts and determine the correctness of the billing until the entry of a final money judgment.

Similarly, in *Equitable Gas*, the Superior Court found the Commission's jurisdiction ended with entry of a final money judgment. However, the court also

8

specifically found the utility was entitled to continue charging the 18% annual late fee authorized by its tariff until the entry of a final judgment in court. Here, no final judgment is entered by merely docketing an existing lien. Thus, PGW is likewise entitled to continue adding late fees as authorized by its Commission-approved tariff, unless and until it reduces a docketed lien to a final money judgment.[12]

In short, a municipal lien arises automatically and is not converted to a judgment or anything else by merely docketing it in the County Court. This basic precept of municipal law highlights the fundamental fallacy in the Commission's analysis. Charges for natural gas are a lien on the relevant property from the time those charges are imposed. Docketing the lien does not change that fact; there is always a lien on every penny owed by the customer, whether that lien is docketed or not. Following the Commission's reasoning that a lien precludes late charges, PGW could never impose the late charges the Commission has approved in PGW's tariff, because the lien would always predate any delinquency in payment. Because docketing a lien does not invoke judicial process, there is no legal basis to conclude that merely docketing an existing lien affects the Commission's jurisdiction.

Therefore, we hold that the Commission committed an error of law in holding that it lacked jurisdiction over gas charges subject to docketed liens. We further hold that the Commission committed an error of law in holding that PGW could not continue to impose late fees of 1.5% per month on delinquent accounts once the City docketed its municipal liens relating to those accounts.

---

[12] The money judgment at issue in *Equitable Gas Co. v. Wade*, 812 A.2d 715 (Pa. Super. 2002), was *in personam*, not *in rem*. Thus, although the issue of collectability of the 1.5% monthly late fee in *Equitable Gas* is analogous to the issue here, the question of collecting the fee after docketing a municipal lien is, as the Commission observed, a matter of first impression.

Because we find PGW is entitled to continue adding late charges to delinquent accounts after the City dockets its liens relating to those delinquencies, it follows that the Commission also erred in imposing penalties, ordering refunds of previously imposed late fees, and directing billing changes relating to charges subject to docketed liens. Thus, our holding effectively disposes of all of PGW's issues on appeal. Accordingly, we need not further address PGW's arguments on those issues.[13]

## IV. Conclusion

Based on the foregoing discussion, we conclude the Commission erred in directing that PGW cannot continue to add late fees to delinquent gas bills that are subject to docketed municipal liens. We likewise conclude the Commission erred in ordering refunds of late fees, imposing financial penalties, and directing PGW to revise its billing system in relation to the late fees and docketed liens. Accordingly, we reverse the Commission's orders.

_____
ELLEN CEISLER, Judge

---

[13] We likewise find it unnecessary to address PGW's constitutional due process argument.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Philadelphia Gas Works, | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 1291 C.D. 2018 |
| | : | |
| Pennsylvania Public Utility | : | |
| Commission, | : | |
| Respondent | : | |

# **O R D E R**

AND NOW, this 9th day of December, 2019, the orders of the Pennsylvania Public Utility Commission are REVERSED.

_____
ELLEN CEISLER, Judge